UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

PATRICK JAMES ZIENTEK, )
CHARLOTTE KATHLEEN ZIENTEK, )
 )
      Plaintiffs, )
 ) No. 1:05-CV-326
v. )
 ) Chief Judge Curtis L. Collier
STATE FARM INTERNATIONAL )
SERVICES INC., and/or STATE FARM )
INSURANCE COMPANIES, and/or STATE )
FARM FIRE & CASUALTY COMPANY, )
 )
      Defendants. )

## **M E M O R A N D U M**

Before the Court is Defendant State Farm Fire and Casualty Company, Inc.'s[1] ("Defendant") motion for partial judgment on the issue of its liability for statutory bad faith (Court File No. 5). Defendant has filed numerous attachments to its motion, as well as a brief and affidavit in support of its motion (Court File Nos. 5, 6, 7, 8); Plaintiffs Patrick and Charlotte Zientek ("Plaintiffs") filed a response to Defendant's motion for partial summary judgment (Court File No. 9) to which Defendant has filed a reply (Court File No. 13). For the following reasons, the Court will **GRANT** Defendant's motion for partial summary judgment on the issue of Defendant's liability for statutory

---

[1] Defendant asserts the insurance policy at issue in this matter was issued by State Farm Fire & Casualty Company, Inc. and there is no factual basis for any cause of action against State Farm International Services, Inc. and/or State Farm Insurance Companies, Inc. The Complaint in this cause of action refers to "Defendant" in the singular throughout the Complaint and does not specify to which of the named entities the allegations are directed. Plaintiffs did not address this issue in their response. Therefore, the Court will refer to State Farm Fire & Casualty Company, Inc. as the sole remaining Defendant in the case.

bad faith.

I. **STANDARD OF REVIEW**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make an issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

as a matter of law." *Id.* at 251-52, 106 S. Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.*; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.  RELEVANT FACTS

Plaintiffs own a home located at 8235 Middle Valley Road, Hixson, Hamilton County, Tennessee ("the Home") (Court File No. 1, Exhibit A). Defendant insures the Home and its contents (Court File No. 7, ¶ 2). On Sunday, November 7, 2004, Plaintiff Patrick Zientek called 911 to report a fire at the Home (Court File No. 5, Exhibit F, p. 160). On the same day, the Dallas Bay Volunteer Fire Department received a call, reporting a house fire at the Home ("the Fire") (Court File No. 5, Exhibit B, p. 160). Chief Al Rosemond responded to the Fire and signed a "Basic Fire Incident Report" ("Fire Report"). The Fire Report indicated the ignition factor was "suspicious" and the Fire originated in "multiple locations" (*Id.*). Further, the Fire Report lists the source of the heat as "match" (*Id.*).

Plaintiff Patrick Zientek was at home alone when the fire started (Court File No. 5, Exhibits D, E; Court File No. 11, ¶ 4). Plaintiff Patrick Zientek admits there were two fires in two separate locations (Court File No. 11, ¶ 4). Also, Plaintiff Patrick Zientek served in the first Gulf War as a Petroleum Supply Specialist and, while in the military, received training in fire safety, fire containment and fire prevention (Court File No. 5, Exhibit F, pp. 185-86). Plaintiffs claim the Fire was caused by incense, a circumstance within the coverage of their insurance policy (Court File No. 1, Exhibit A, Complaint, ¶ VI).

Defendant hired Les Rowland ("Rowland"), a Senior Fire Investigator employed by

Engineering and Fire Investigations, to investigate the Fire (Court File No. 8, Affidavit of Les Rowland ("Rowland Aff.") ¶¶ 1-2). On November 10, 2004, Rowland conducted his investigation of the Fire and determined the Fire originated in at least two separate and unconnected points inside the Home, specifically, the basement and the kitchen (*Id.* at ¶ 7). Rowland also determined there may have been a third separate and unconnected fire in the early stages, on the screened porch off the kitchen area (*Id.* at ¶ 8). Rowland examined the electrical service throughout the Home (including the basement and kitchen area) and found no indication of an electrical malfunction which could have ignited the Fire (*Id.* at ¶¶ 19, 26).

Rowland noted the fire that started in the basement caused the heaviest amount of fire damage at the floor level in front of the wooden cabinets located along the south wall and a typical "flammable liquid type burn pattern" was burned into the carpet directly in front of the wooden cabinets (*Id.* at ¶¶ 10-11). Further, Rowland found the burn pattern "through the carpet and onto the floor was an irregular shaped burn pattern typical of an incendiary burn as opposed to an accidental burn" and "the front of the cabinets was charred in the straight up and down burn pattern associated with an accelerated burn"[2] (*Id.* at ¶¶ 12-13). Unlike an accidental fire, this burn extended from the floor level straight upward on the front of the cabinets and then onto the top of the cabinet itself (*Id.* at ¶ 15). The burn pattern then extended onto the wall directly above the cabinets in an inverted "V" type pattern that is consistent with an accelerated fire (*Id.* at ¶ 16). Rowland examined debris on top of and in front of the cabinet and found no indication a heat-producing device had ignited the Fire (*Id.* at ¶¶ 18-19).

Additionally, Rowland found the burn patterns in the kitchen were "not consistent with the

---

[2]Rowland also notes that under normal conditions, when a fire occurs, the fire generally burns upward and outward in a "V" type burn pattern" (*Id.* at ¶ 14).

natural progression of an accidental fire" (*Id.* at ¶ 25).  The appliances in the kitchen remained relatively in place and there were no burn patterns to indicate any of the appliances might have been involved in igniting the Fire (*Id.* at ¶ 27).  Rowland determined an "examination of the appliances in the kitchen and the burn patterns effectively eliminated appliances as a source of ignition for the Fire" (*Id.* at ¶ 28).  Finally, Rowland's investigation found no sources of ignition or heat-producing devices that could have ignited a possible third and unconnected fire on the screened porch (*Id.* at ¶¶ 29-31).

Based upon Rowland's investigation of the scene, he concluded "to a reasonable degree of fire investigation certainty, that the Fire was caused by the application of an accelerant and ignited by human hand" and "the Fire was incendiary and not accidental" (*Id.* at ¶¶ 32, 33).  If Plaintiffs intentionally set fire to their home, Plaintiffs can neither recover under the policy nor hold Defendant liable for damages for failing to pay their claim (Court File No. 5, p. 1).

## III.  DISCUSSION

The statute upon which Plaintiffs seek bad faith statutory damages, punitive damages, emotional distress damages and recovery of attorney's fees for Defendant's failure to pay their claim is Tennessee Code Annotated §56-7-105(a), which provides as follows:

> The insurance companies of this state . . . in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

This section is penal in nature and must be strictly construed. *Stooksbury v. American Nat. Property and Cas. Co.,* 126 S.W.3d 505, 518-519 (Tenn. Ct. App. 2003) (citing *Minton v. Tennessee Farmers Mut. Ins. Co.*, 832 S.W.2d 35, 38 (Tenn. Ct. App. 1992)). In order to recover bad faith penalties under this statute, a claimant must prove: (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith. *Hampton v. Allstate Ins. Co.,* 48 F. Supp. 2d 739, 746 (M.D. Tenn 1999); *Stooksbury,* 126 S.W.3d at 519; *Minton*, 832 S.W.2d at 38 (*citing Palmer v. Nationwide Mutual Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App.1986)). The burden of proving that an insurance company acted in bad faith in refusing to pay a claim lies with the insured. *Stooksbury,* 126 S.W.3d at 519; *See Nelms v. Tennessee Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 484 (Tenn. Ct. App.1978).

The bad faith penalty is not recoverable in every refusal of an insurance company to pay a loss. *Stooksbury,* 126 S.W.3d at 519. An insurance company is entitled to rely upon available defenses and refuse payment if there are substantial legal grounds the policy does not afford coverage for the alleged loss. *Id.* "If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the (sic) imposing of the bad faith penalty." *Id.* (*quoting Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 852 (Tenn. Ct. App.1982) (emphasis in original omitted).

The Court finds no genuine issue of material fact exists regarding Defendant's refusal to pay. The refusal to pay the claim was in good faith reliance on Chief Rosemond's Fire Report and the findings of Rowland's investigation, outlined in detail above. Defendant had the benefit of all this information when it informed Plaintiffs on December 2, 2004 there was a question as to whether

Defendant is obligated to pay under the policy for a loss where "the fire has been determined to be incendiary in origin."

The record is devoid of any proof that would warrant a bad faith penalty of any sort in this case. Plaintiffs allege merely they "base their claim of bad faith on the bad faith inaction of the Defendants to pay for the loss or deny the claim" (Court File No. 9, p. 1). Plaintiffs further argue, "[t]he date of the fire loss is November 7, 2004. As early as December 2, 2004, State Farm began to question their obligation to pay on the fire loss claim but never denied that obligation. Formal request for payment was made in May, 2005. By the time the Plaintiffs filed their complaint on October 21, 2005, they still did not know if their claim would be denied."

The Tennessee Supreme Court has made it clear the purpose of the bad faith statute is to "allow the insurer to evaluate its reasons for denying the claim after being aware for 60 days that if the claim is not paid, the insurer faces the risk of exposure to a bad faith penalty claim." *Hampton,* 48 F. Supp. 2d 746. Assuming a formal demand was made in May 2005[3], the Plaintiffs only had to wait 60 days before filing their claim against Defendants. Plaintiffs instead waited until October 21, 2005 to file their complaint because the claim was still unpaid at that time. Plaintiffs cite no authority to support their contention Defendant's failure to deny the claim within or at some point after 60 days equates to bad faith under the statute. Such an argument is completely without merit.

To show Defendant acted in bad faith, Plaintiffs must show there were no legitimate grounds for disagreement about the coverage of the insurance policy. *Marlin Financial & Leasing Corp. v. Nationwide Mut. Ins. Co.,* 157 S.W.3d 796, 812 -13 (Tenn. Ct. App. 2004), *appeal denied* (February

---

[3] Defendant also claims Plaintiff never filed a formal claim. As the Court finds there was a good faith refusal to pay the Plaintiffs' claim, the Court will not discuss whether or not a "formal demand" for payment was made.

28, 2005). Plaintiffs admit "a genuine issue of fact exists as to the validity of the Plaintiffs' claim. Was the fire cased by arson?" (Court File No. 9, p. 2). Given all the facts and circumstances of this case, and assertions submitted by both parties, the Court finds a legitimate ground for disagreement about the coverage of the insurance policy – specifically, the actual cause of the Fire. Therefore, Plaintiffs have failed to meet their burden of proof on this claim. Plaintiffs have not come forward with any evidence showing there is a genuine issue for trial on their claim for recovery of the statutory bad faith penalty, punitive damages, damages for emotional distress, and attorney's fees. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' claim for recovery of the bad faith penalty and will **DISMISS** their claims for the statutory bad faith penalty, punitive damages, damages for emotional distress, and attorney's fees.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's motion for partial summary judgment (Court File No. 5).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**