UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PATRICK J. ZIENTEK,  )
CHARLOTTE K. ZIENTEK,  )
  )
      Plaintiffs,  )
  )  No. 1:05-CV-326
v.  )
  )  Chief Judge Curtis L. Collier
STATE FARM FIRE & CASUALTY CO.,  )
  )
      Defendant.  )

**M E M O R A N D U M**

Before the Court are a number of motions in limine filed by State Farm Fire & Casualty Co. ("Defendant"). The case set for trial on Monday, December 10, 2007. Specifically, Defendant has filed six (6) motions in limine to exclude evidence (Court File Nos. 39, 40, 41, 42, 43, 44). During a hearing on another matter in this case, the Court struck the responses of Patrick J. Zientek ("Plaintiff") for violations of Local Rule 83.4(c) (Court File No. 108). For reasons set forth below, the Court will **GRANT**, **DENY**, and **RESERVE RULING** on these motions. This ruling is based upon the facts before the court at this time. Should facts submitted at trial differ from those presented, the Court may revisit these rulings.

## I. FACTUAL & PROCEDURAL BACKGROUND

Plaintiff and Mrs. Charlotte Zientek (collectively, "Plaintiffs") own a home located at 8235 Middle Valley Road, Hixson, Tennessee (the "Home") (Court File No. 1, Ex. A). Defendant insures the Home and its contents (Court File No. 7, ¶ 2). On Sunday, November 7, 2004, Plaintiff dialed "911" to report a fire at his Home (Court File No. 5, Ex. F, p. 160). On the same day, the Dallas Bay

Volunteer Fire Department received a call, reporting a house fire at the Home (the "Fire") (Court File No. 5, Ex. B, p. 160). Fire Chief Al Rosemond responded to the Fire, eventually completing a Basic Fire Incident Report ("Fire Report"). The Fire Report indicated the ignition factor was "suspicious" and the Fire originated in "multiple locations" (*id*.). Further, the Fire Report lists the source of the heat as "match" (*id*.).

Plaintiff was at home alone when the fire started (Court File No. 5, Exs. D, E; Court File No. 11, ¶ 4). Plaintiff admits there were two fires in two separate locations (Court File No. 11, ¶ 4). Plaintiffs claim the Fire was caused by incense, a catalyst within the coverage of their insurance policy (Court File No. 1-2 ¶ VI). Defendant alleges that Plaintiffs intentionally set the fire (Court File No. 3 ¶¶ 5, 9).

Plaintiffs instituted this action against Defendant for breach of their insurance contract in the Circuit Court of Hamilton County, Tennessee, on October 21, 2005 (Court File No. 1-2 ¶¶ XI, XII). Defendant removed the action from state court to this Court (Court File No. 1). This Court granted partial summary judgment in Defendant's favor on April 10, 2006, dismissing Plaintiffs' claims for recovery of the statutory "bad faith" penalty, punitive damages, damages for emotional distress, and attorney's fees (Court File No. 15).

Trial in this case has been continued four (4) times. Originally set for February 5, 2007, trial was continued to February, 26, 2007 (Court File Nos. 17, 33), June 25, 2007 (Court File No. 59), October 1, 2007 (Court File No. 67), and, finally, December 10, 2007 (Court File No. 108).

Defendant filed the pending motions in limine on February 7, 2007 (Court File Nos. 39, 40, 41, 42, 43, 44). The Court set the deadline for responses on August 10, 2007 (Court File No. 74); though represented, Plaintiff pro se filed responses, which the Court struck (Court File No. 108). As

no more responses were filed, this matter is ripe for decision.

## II. DISCUSSION

### A. Defendant's Motion in Limine to Exclude Evidence of Payments Made to Plaintiffs (Court File No. 39)

Defendant first seeks to exclude evidence of payments made pursuant to the terms of its insurance policy with Plaintiffs (Court File No. 39). Defendant argues "any payments made under the Policy were being made under a clear reservation of right, therefore, plaintiffs cannot prove that Defendant waived its right to deny the claim or is otherwise estopped from denying the claim by virtue of these payments" (*id.* at 3). Defendant argues since "[P]laintiffs cannot prevail on a claim of equitable estoppel . . . any testimony regarding payments made by [Defendant] under reservation of rights should be excluded." (*Id.* at 4).

Under the terms of the insurance policy, payments made for covered claims may not be interpreted as admissions of liability (*id.*, Ex. A, p. 30). The first payment was made on November 9, 2004 (*id.*, Ex. D, p. 4). On December 2, 2004, Defendant notified Plaintiffs that such payment did not waive any of the conditions of their insurance contract (*id.*, Ex. B).

Under the Federal Rules, relevant evidence is generally admissible and irrelevant evidence is not admissible. Fed R. Evid. 402. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Fed. R. Evid. 401.

Both the insurance contract and a separate letter explained that any payments were made under a reservation of right. Under both the terms of the contract and the notice the payments are not an admission of liability. The payments therefore, cannot be used to show the liability of the

insurance company.

Upon the record before the Court there is no purpose for this evidence other than as proof of liability in the case. The issue in the case is whether the Plaintiffs set the Fire intentionally or not. Because the contract clearly states these payments are not admissions of liability and there is no other likely use of this evidence it has no tendency to make any fact of consequence to the determination of the action more or less likely. Fed. R. Evid. 401. Therefore Defendant's motion will be **GRANTED**.

    **B.    Defendant's Motion in Limine to Exclude Evidence of Cost to Repair Structure and Cost to Repair or Replace Personal Property (Court File No. 40)**

Defendant next moves to exclude evidence of costs Plaintiffs incurred in repairing their Home and repairing/replacing their personal property. Defendant argues Plaintiffs *have not* repaired or replaced the damaged part of their Home; further, Plaintiffs had, to Defendant's knowledge, replaced only a limited amount of their personal property allegedly damaged in the fire (Court File No. 40, p. 4). Under the real property terms of the insurance contract Plaintiffs may only recover the "actual cash value at the time of the loss of the damaged part of the property." (*Id*. at 5).

According to the terms of the insurance contract, Plaintiffs must comply with certain conditions to qualify for payment of the damages Plaintiffs offers. These measures of damages differ depending on whether the damaged property is personal property or real property. For Plaintiffs to recover the actual cost to repair real property Plaintiffs have to complete the repair or replacement of their damaged Home within two (2) years of the date of loss (*id*. at 3). Failing this, Plaintiffs may only recover "the actual cash value at the time of the loss of the damaged part of the property ." *Id.* For personal property, Plaintiffs would have to repair or replace the property within two (2) years or else Defendant is responsible for the cost to repair or replace less depreciation (*id*. at 4). The fire

4

occurred on November 7, 2004. Therefore, Defendant argues that Plaintiffs' estimate of repair and inventory of replacement are not correct measures of damages. Since these are not the correct measures of damages, Defendant moves to exclude them as not have the tendency of making any fact in dispute more or less likely (*id*. at 1) (citing Fed. R. Evid. 401).

For Plaintiffs to admit the evidence of an estimate to repair the real property, Plaintiffs must have some theory of interpretation of the contract where the estimate is the appropriate or could be used to calculate the appropriate measure of damages. Interpretation of a contract is within the Court's providence. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Outside a showing to the court of some theory of interpretation which makes this measure of damages appropriate this evidence is irrelevant. For the evidence of the Plaintiff's estimate of cost to repair their home Defendant's motion will be **GRANTED**.

The evidence of replacement costs for personal property is relevant for the measure of damages even if Defendant is correct. According to the policy, Defendant pays only the cost to repair or replace less depreciation (Court File No. 40 at 4). This measure of damages starts with the costs Plaintiffs submit and then subtracts the value of depreciation. As the cost to replace is necessary to the final calculation, this evidence is relevant to the determination of damages even if Defendant's measure of damages is the correct one. Since evidence of the replacement costs of personal property is relevant even if Defendant is correct, Defendant's motion will be **DENIED** for this piece of evidence.

Since some of this evidence is relevant and some is not, Defendant's motion will be **DENIED** in part and **GRANTED** in part.

    **C.**    **Defendant's Motion in Limine to Exclude Results of Testing Performed on Fire Debris Samples (Court File No. 41)**

Defendant next moves to exclude evidence of tests which Defendant's own expert performed on fire debris samples. Defendant retained Mr. Rowland as an expert on the cause and origin of fires (Court File No. 47, p. 2). Mr. Rowland gathered four (4) samples of fire debris from various locations throughout the Home and sent the samples for laboratory testing (Court File No. 41, p. 2). The samples tested negative for accelerants (Court File No. 41, Ex. C). Defendant argues the Court should exclude this evidence as irrelevant. Defendant offers two (2) reasons the test results do not make it more or less probable this fire was intentionally set (*id*. at 4).

Based upon the Court's review of the expert's deposition testimony, the Court views his testimony on this point as of marginal relevance. The test sample neither preclude nor prove arson. His testimony does not support the argument there was no arson nor does it demonstrate there was an arson. While the Court views it of marginal relevance the Court will err on the side of admissibility. To the extent there is any danger of misuse or confusion regarding the testimony, the Court notes the expert in his deposition adequately explained the limited conclusions one can draw from the results.

> **D.** **Defendant's Motion in Limine to Exclude References to John Lentini and to Exclude Photographs taken by John Lentini (Court File No. 42)**

Defendants next object to the use of Mr. John Lentini ("Lentini") as a witness or an expert witness. As Defendant correctly notes, Lentini is not on Plaintiff's witness list (Court File No. 35). The time to add Lentini to the witness list has long since passed. Therefore, as to Lentini's testimony as a witness, Defendant's motion is **GRANTED**.

Defendants also object to the use of photographs at trial. The photographs were taken by Lentini (Court File No. 42, Ex. C). The general rule is, when used for illustrative purposes, photographs are admissible if a witness with firsthand knowledge testifies they are a fair and accurate

6

representation of the subject. 2 McCormick, *Evidence* § 215 (2006 ed. Kenneth S. Broun); *Jenkins v. Associated Transport, Inc*. 330 F.2d 706, 710 (6th Cir. 1964). As to this use of the photographs the Court will **RESERVE RULING** until trial.

  **E.**  **Defendant's Motion in Limine to Exclude Detective Mark King as a Witness at Trial (Court File No. 43)**

Defendant next moves to exclude Detective Mark King's ("Det. King") testimony as being irrelevant. Defendant argues "Detective King reached the conclusion that he could not reach any conclusion at all" and so cannot make any fact in dispute more or less likely (Court File No. 43). What Det. King determined was he had no "probable cause to pursue any criminal charges." (*Id*., Ex. B). In other words, Det. King did not develop enough evidence during his investigation to establish probable cause to charge/arrest an arsonist. The statements at issue are opinions, unless Det. King is properly qualified as an expert, he may not give an opinion about a matter requiring technical or other specialized knowledge. Fed. R. Evid. 702. It is unlikely Det. King qualifies as an expert capable of offering opinions. However, he if he is merely going to testify to factual matters of which he has personal knowledge, he may have relevant testimony. The Court shall **RESERVE RULING** on any statements of fact by Det. King so long as they satisfy the other applicable rules of evidence.

The report itself is admissible as an exception to the hearsay rule. Fed. R. Evid. 803(b)(8); *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2nd Cir. 1991). However, the contents and statements within the report must also be admissible. The Court will **RESERVE RULING** on the report until if is offered at trial.

  **F.**  **Defendant's Motion in Limine to Exclude Evidence of Right to Recover Half of Insurance Proceeds Under the 'Innocent Co-Insured Doctrine' (Court File No. 44)**

Defendant next moves to exclude evidence related to the 'innocent co-insured doctrine,' a

7

theory of legal recovery in Tennessee. Tennessee courts have held a plaintiff could recover if the plaintiff could show both (1) the policy was ambiguous on whether an innocent coinsured was covered, and (2) the coinsured had a sole or separate interest in the property. *Spence v. Allstate Ins. Co.*, 883 S.W.2d 586, 591 (Tenn. 1994). Although this is set out as a separate theory of recovery, the innocent co-insured doctrine is little more than a particular application of the interpretation of contract meaning. *Ryan v. MFA Mut. Ins. Co.*, 610 S.W.2d 428, 435 (Tenn. Ct. App. 1980). If a contract is ambiguous, ambiguities shall be construed against the drafter of the contract. 11 *Williston on Contracts* § 32:12 (4th ed.); Restatement (Second) of Contracts § 206. This is merely to say if an insurance contract arguably allows recovery for an innocent co-insured then the Court will construe the contract to allow such a recovery, for the insurance company should have more clearly drafted the document.

In order to decide this issue, the court would have to determine the precise meaning of the insurance contract. The interpretation of a contract is within the Court's providence. *Guiliano*, 995 S.W.2d at 95. The terms are straight forward. "If you or any person insured under this policy causes . . . a loss to property covered under this policy . . . then this policy is void." (Court File No. 44, Ex. B at 26). Insured includes relatives if residents of the household (*Id*., Ex. B at 12). Because Defendant is a person insured under this policy, any action of Defendant under the terms of the contract would void the contract. Under the terms of the contract any wrongful action undertaken by Plaintiff would terminate Plaintiff's Wife's coverage as well. Absent the Court finding the insurance contract ambiguous as to whether an innocent co-insured may recover, the parties may not argue the innocent co-insured doctrine. To this extent Defendant's motion will be **GRANTED in part**.

To the extent that the motion calls for the exclusion of evidence as to the nature of the ownership interests of Plaintiffs in the Home, this motion will be **DENIED in part**.

III. **CONCLUSION**

For the reasons set out above the Court will **GRANT in part**, **DENY in part**, and **RESERVE RULING** on the pending Motions in Limine.

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**